ALEXANDER D. CUMMINGS *vs.* JOHN F. BAARS, JR.

January 31, 1887.

**Receipt, "in Full of All Demands," when Conclusive.**—A receipt "in full of all demands" or "all accounts" may, like any other receipt, be contradicted by parol evidence that the payment was not made as acknowledged; but where it contains an agreement or stipulation, upon a compromise or settlement of disputed claims or unliquidated damages, that the one party is to receive or accept a certain sum in full acquittance and discharge of such claims, it is a contract, and is not liable to be contradicted by parol, but is conclusive upon the parties in the absence of fraud or mistake.

**Same—Fraud or Mistake—Evidence.**—As to what weight of evidence of fraud or mistake is necessary to impeach such a contract, *quœre.*

**Same—Appellant concluded by Instruction given at his Request.**— But the court having, *at the request of the appellant,* instructed the jury that "plaintiff, to establish fraud, must clearly prove it *by a preponderance of evidence,*" the sufficiency of the evidence to support a verdict must on appeal be tested by that standard.

Appeal by defendant from an order of the district court for St. Louis county, *Stearns,* J., presiding, refusing a new trial after verdict of $2,588.79, for plaintiff.

*Ensign & Cash* and *White & Reynolds,* for appellant.

*S. L. Smith,* for respondent.

MITCHELL, J. This action was brought to recover certain commissions for examining and entering certain pine lands, and for services performed in superintending the cutting and driving of logs. The defendant pleaded, among other things, a settlement upon which he paid plaintiff $2,517.52, which the latter agreed in writing to accept

in full of all demands. Plaintiff, in reply, admitted signing a receipt in full, but alleged that defendant procured his signature thereto by fraud and misrepresentation. The evidence showed that in the autumn of 1881 the parties made a contract, by which the plaintiff was to look up, estimate, locate, and purchase for defendant pine lands on the Nemadji river, for which services he was to receive, as commissions or compensation, whatever the stumpage cost less than one dollar per 1,000 feet; that, in pursuance of this agreement, plaintiff did look up, locate, and enter for defendant quite an amount of pine land. The evidence also shows that he looked up and examined certain pine lands in the same locality belonging to the St. Paul & Duluth Railroad Company, (and called "Railroad Lands,") and furnished defendant estimates and reports of the same, on the strength of which defendant himself bought the lands of. the railroad company in St. Paul.

Upon a settlement had between the parties November 17, 1882, a statement of account (Exhibit A) was drawn up, in which certain lands thus looked up by plaintiff for defendant were described, and opposite each tract was set down the estimated amount of pine on it, and the cost of the land, and the amount of plaintiff's commissions on the basis of the contract already referred to, the aggregate of which, after deducting certain payments, (and $650 for certain land turned over to plaintiff with which to pay a claim of Paine & Co. for trespass on their lands by him while superintending the cutting of logs,) amounted to $2,517.52.

Attached to and following this statement was the following written instrument:

"*Settled as above* this seventeenth day of November, 1882, at Duluth, Minn., amount which is in full payment of all demands of whatever kind and nature to this date, including the claim of trespass of Paine & Co., of N. P. Junction, which I hereby agree to settle, and hold J. F. Baars, Jr., harmless on account of the same.

"A. D. CUMMINGS."

The so-called "railroad lands" were not included in this statement, and consequently no commissions therefor were included in this sum

of $2,517.52. In view of the evidence as to the amount of pine on these lands, and their cost to defendant, it is really uncontradicted that, if plaintiff was entitled to commissions on them, these commissions would amount to as much or more than the verdict rendered for plaintiff. Plaintiff's explanation, in his testimony, of the fact why these lands were not included, was that defendant falsely represented to him that they cost him more than one dollar per 1,000 feet of stumpage, and that, relying upon this representation, the plaintiff supposed no commission was due him on them. On the other hand, defendant denies that he ever made any such representation, but claims that it was agreed, at the time these lands were examined, that plaintiff would charge no commission on them, because he examined them when up in the woods on other business, and because defendant himself went to St. Paul to buy them of the railroad company. The defendant asked the court to charge the jury as follows:

"(1) The jury are directed to find a verdict for the defendant.

"(2) The contract of settlement dated November 17, 1882, introduced in evidence by defendant, is a contract, and cannot be altered or varied by parol. So far as it is a receipt, it might be varied by showing that the money receipted for was not paid, but only so far. There is no dispute that the money was paid as receipted for, and the contract cannot be varied, and is conclusive against the plaintiff.

"(3) Where parties meet and have a settlement of differences, and reduce such settlement to writing, such writing is presumptively conclusive upon the parties, and he who would attack it can only do it by showing clearly, by a preponderance of evidence, either fraud or mutual mistake. In this case no mistake is alleged; and plaintiff, to establish fraud, must clearly prove it by a preponderance of evidence. Fraud is never presumed; it must be proved affirmatively."

The third of these requests was granted, but the other two were refused, and their refusal is the only error assigned. As it would have been error to grant either the first or second request if there was sufficient evidence of fraud or misrepresentation to go to the jury on the question of surcharging or setting aside the settlement, it follows that both assignments of error are in substance but one,

and present the single question whether there is sufficient evidence to sustain the verdict.

Defendant's contention in support of his assignment of errors is predicated wholly on two propositions: (1) That this instrument executed by plaintiff is not a mere technical receipt for so much money paid, but also a written contract of acquittance, release, and discharge of all claims or demands, for the agreed sum of $2,517.52, and, as such, cannot, like a mere receipt, be varied or contradicted by parol, but is conclusive upon the parties unless vitiated by fraud or mutual mistake; (2) that, to set aside or go behind such a contract on the ground of fraud or mistake, a mere preponderance of evidence *dehors* the instrument itself is not sufficient, but that the proof must be clear and strong, and such as would in an action in equity have justified the court in reforming the contract.

A "receipt" may be a mere acknowledgment of payment of a certain sum of money, or it may also contain a contract; and, of course, the rule is very familiar that, so far as it goes only to acknowledge *payment*, it may be contradicted by parol evidence *that the payment was not made;* but, in so far as it contains a contract, it stands upon the footing of other written contracts, and cannot be varied or contradicted by parol. *Sencerbox* v. *McGrade*, 6 Minn. 334, (484;) *Wykoff* v. *Irvine*, Id. 344, (496,) (80 Am. Dec. 461;) *Morris* v. *St. Paul & Chicago Ry. Co.* 21 Minn. 91.

Some of the authorities would seem to leave it a little in doubt just what force they would give to receipts acknowledging payment "in full" of a specified debt, or "in full of all accounts" or "all demands." See 1 Phil. Ev. 474, and notes; Bouv. Law Dict. tit. "Receipt." Of course, like any other receipt, it may be contradicted by parol evidence that the *payment* was not made as acknowledged in the receipt. *Morris* v. *St. Paul & Chicago Ry. Co., supra.* But where it contains anything in the nature of an agreement or stipulation, upon a compromise or settlement of disputed claims or unliquidated damages, that the one party shall receive and accept from the other a certain sum in acquittance and discharge of such claims, it is in the nature of a contract, and cannot be varied or contradicted by parol, but is conclusive upon the parties, in the absence of fraud or mistake. *Mor-*

v.36m—23

*ris* v. *St. Paul & Chicago Ry. Co.*, *supra; Kellogg* v. *Richards,* 14 Wend. 116; *Coon* v. *Knap,* 8 N. Y. 402, (59 Am. Dec. 502.)

We are inclined to agree with counsel for defendant that this receipt, in the present case, is of this character; but, even if so, he has nothing to complain of. This is precisely the effect and force given to it by the court below in granting his third request to charge. It is true that in one place in his general charge the court did limit the contractual character of the instrument to the agreement of plaintiff to settle the claim of Paine & Co., and to hold defendant harmless therefrom; *but to this there was no exception.*

As to the weight of evidence to set aside a written contract of settlement on the ground of fraud or mistake, there is much force in what defendant says. There is a strong presumption that the written instrument, which the parties have deliberately executed, expresses their intentions; and if the written contract is to go for nothing, and the one party may oppose his oath to that of the other as to fraud, written contracts would amount to very little. See *Sloan* v. *Becker,* 34 Minn. 491, (26 N. W. Rep. 730.) But in the present case the appellant has foreclosed the question. At his own request the court charged the jury that "plaintiff, to establish fraud, must clearly prove it by a preponderance of evidence." The case having been, at defendant's own instance, submitted to the jury on this theory, the sufficiency of the evidence to support the verdict must be tested by this standard. Like the court below, we are not entirely satisfied to see this settlement surcharged upon the evidence in this case, and possibly we might have been better satisfied had the learned judge seen his way clear to have granted a new trial. But the trial court did not feel justified in disturbing the verdict, and we, as an appellate court, do not feel warranted in interfering with this exercise of his judicial discretion in the matter. The evidence was conflicting, and that of the defendant, at least as it appears to us on paper, has a certain air of indefiniteness and evasiveness on certain points that is not at all satisfactory.

In view of all the facts, we must affirm the order denying a new trial.

Order affirmed.